## FRIEND v. COMMISSIONER OF INTERNAL REVENUE.

### No. 4440.

United States Court of Appeals
Tenth Circuit.

Aug. 14, 1952.

4. Gart v. United States, 10 Cir., 294 F. 66.

John Dugan, Denver, Colo. (Charles E. Friend, pro se, was with him on the brief), for petitioner.

Hilbert P. Zarky, Washington, D. C. (Ellis N. Slack, Acting Asst. Atty. Gen., Robert N. Anderson and Carolyn R. Just, Sp. Assts. to the Atty. Gen., were with him on the brief), for respondent.

Before BRATTON, HUXMAN, and PICKETT, Circuit Judges.

BRATTON, Circuit Judge.

The question presented for determination on this petition to review a decision of the Tax Court is whether certain gain accruing to Charles E. Friend, hereinafter referred to as the taxpayer, during the year 1947 should be taxed as ordinary income or as income derived from the sale of capital assets. In his return for that year, the taxpayer treated the gain as income derived from the disposition of capital assets. The Commissioner of Internal Revenue determined that it was taxable as ordinary in-

come, and a deficiency in tax followed. The Tax Court sustained the action of the Commissioner, and the taxpayer sought review.

Under the terms of section 117 of the Internal Revenue Code, 26 U.S.C. § 117, a taxpayer is entitled to preferential treatment of gain derived from the sale or disposition of a capital asset, but the statute expressly excludes from its scope gain derived from the sale or disposition of property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business. No fixed formula or rule of thumb has been evolved for ready use in determining in every case whether property sold by a taxpayer was held by him primarily for sale to customers in the ordinary course of his trade or business. Each case must turn upon its own facts and circumstances. But certain factors have been laid down as helpful guides for appropriate consideration in reaching a correct solution of the question. Among such factors are the purposes for which the property was acquired; the activities of the taxpayer and those acting in his behalf or under his direction, such as making improvements or advertising the property to attract purchasers; the continuity and frequency of sales as distinguished from isolated transactions; and any other fact which tends to indicate whether the sale or transaction was in furtherance of an occupation of the taxpayer. Mauldin v. Commissioner, 10 Cir., 195 F.2d 714; Dunlap v. Oldham Lumber Co., 5 Cir., 178 F.2d 781; Rollingwood Corp. v. Commissioner, 9 Cir., 190 F.2d 263.

It is the well settled rule that whether property sold or otherwise disposed of by a taxpayer was held by him for sale to customers in the ordinary course of his trade or business, within the meaning of section 117, is essentially a question of fact. Rubino v. Commissioner, 9 Cir., 186 F.2d 304, certiorari denied, 342 U.S. 814, 72 S.Ct. 28; King v. Commissioner, 5 Cir., 189 F.2d 122, certiorari denied, 342 U.S. 829, 72 S.Ct. 54; Mauldin v. Commissioner, supra. It is the function of the Tax Court to weigh evidence, draw inferences, resolve conflicts, and determine facts. And a finding of fact made by that Court will not be disturbed on review if it is sustained by substantial evidence and is not clearly wrong. Helvering v. National Grocery Co., 304 U.S. 282, 58 S.Ct. 932, 82 L.Ed. 1346; Commissioner of Internal Revenue v. Scottish American Investment Co., 323 U.S. 119, 65 S.Ct. 169, 89 L.Ed. 113.

The Tax Court expressly found that the property sold with accruing gain which gave rise to this controversy was held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business. The finding is challenged. Evidence was adduced which tended to establish these facts. The taxpayer resided in Denver, Colorado. He was sixty-four years of age at the time of the hearing. He had engaged in the practice of law in Colorado since 1914. Since 1933, his practice consisted primarily of probate matters, noncontested matters, and office practice; and in connection with such practice, he frequently assisted in the sale of real estate for his clients. In 1946, he obtained a real estate broker's license; he caused it to be renewed for subsequent years; and in 1946 and 1947, he was listed in the classified section of the telephone directory of Denver under "Real Estate". In 1946, he began the probate of the Henry Shannon estate. The surviving widow of the deceased appointed him to sell part of the property belonging to the estate. In connection with the disposition of such property, he caused letterheads to be printed with his name, address, telephone numbers, and the words "Attorney at Law", "Real Estate", and "Insurance" thereon. Some of the property belonging to the estate was in Block 16, East Berkeley, in Denver, which was the first block south of Block 17. Both blocks were zoned to residences. The taxpayer concluded that he could not sell the Shannon property in Block 16 unless it was zoned to business. Confronted with that condition, he initiated proceedings to have such property rezoned and it was later done. While obtaining signatures of persons seeking or consenting to the rezoning of the property in Block 16, the taxpayer learned that Block 17 could be purchased. In June, 1946, he

began negotiations ·which resulted in his purchase of the property for $14,000. A down-payment of $5,000 was made in June; $2,000 was paid in August; and the balance was paid in December. The property was bounded by paved streets on all four sides; electricity had been installed across the block; and a sewer had been laid through it. Petitioner, at his own expense, further improved the property by causing a water main to be laid and having the land leveled and graded. He later laid out, platted, and resubdivided the property into 24 lots; and he named the subdivision "Friend's Resubdivision of Block 17, East Berkeley". In June, 1946, he started proceedings to have the Federal Boulevard side of the block rezoned to business use; and in September, 1947, it was rezoned. In 18 separate sales made during the year 1947, petitioner sold 21 of the 24 lots in Block 17. The first sale was made in April and the last in November, and the net profit from the sales amounted to $16,047.39. The taxpayer listed the property with real estate brokers, utilized the services of other salesmen in selling some of the lots, paid commissions in the amount of $1,464.80, advertised the property for sale in newspapers, and placed "For Sale" signs on it. He did not construct any building on the property, and he did not receive any rental for a lease on any of the lots. He made some effort to lease part of the property but was unsuccessful. In his income tax return for 1946, the taxpayer listed his occupation as that of "Lawyer & Real Estate". In his return for 1947, he listed his occupation as "Lawyer Real Estate Broker", and in a schedule to the return he stated the nature of his business to be "Lawyer & Real Estate". And in 1947, he attributed one-third of his office expense to the cost of selling the property and deducted such amount in arriving at his net profit on the sale of such property. Viewing all of these facts and circumstances in their totality, together with the inferences fairly to be drawn from them, it cannot be said that the Tax Court erred in finding that the taxpayer held the property primarily for sale to customers in the ordinary course of his trade or business, and in concluding that the gain derived therefrom was subject to tax as ordinary income. Mauldin v. Commissioner, supra; White v. Commissioner, 5 Cir., 172 F.2d 629; King v. Commissioner, supra.

The taxpayer lays emphasis upon his own testimony that he acquired the property as an investment; that at the time of the purchase, at the time of the laying of the water main and the leveling and grading of the land, and at the time of the initiation of the proceedings for rezoning, he intended to improve some of the lots and to give long-term leases on others; and that when he found it impossible to negotiate leases and impossible to finance the undertaking otherwise, he decided for the first time to sell the property. While his intention at the time of acquiring the property, at the time of the making of further improvements, and at the time of causing the property to be rezoned was a matter for appropriate consideration of the Tax Court, it was not controlling. The ultimate question of decisive consequence was the purpose for which he was holding the property at the time of the sales. Mauldin v. Commissioner, supra; Rollingwood Corp. v. Commissioner, supra.

The taxpayer points to his own testimony that the underlying reason for obtaining the real estate broker's license was to make it possible for him to sell the property belonging to the Shannon estate without incurring any hazard of civil and criminal penalties under the law of Colorado. But that testimony was merely an explanation for appropriate consideration by the Tax Court. It was not compelling in the determination of the ultimate question whether the property in question was being held primarily for sale to customers in the ordinary course of the trade or business of the taxpayer.

And finally, the taxpayer directs attention to the fact that during the year in question he was engaged in the practice of law. But one may engage in two occupations. He may engage in the practice of law as a profession and at the same time hold property primarily for sale to customers in the ordinary course of the real estate

business, within the meaning of section 117. Snell v. Commissioner, 5 Cir., 97 F.2d 891; Oliver v. Commissioner, 4 Cir., 138 F.2d 910; King v. Commissioner, supra.

The decision of the Tax Court is Affirmed.