**Joe DI LISIO and Christina Di Lisio, husband and wife, Plaintiffs,**

v.

**Steve P. VIDAL, Director of Internal Revenue for the District of New Mexico, Defendant.**

**Civ. No. 2697.**

United States District Court
D. New Mexico.

June 24, 1955.

John P. Dwyer, Albuquerque, N. M., for plaintiffs.

Paul F. Larrazolo, U. S. Atty., Albuquerque, N. M., for defendant.

HATCH, Chief Judge.

Petitioner, Joe Di Lisio, has brought this action for a refund of income taxes assessed and paid for the years 1949 and 1950. The facts are not in serious dispute. In fact, the decision reached has been based almost altogether upon the taxpayer's own testimony. He was a very frank and truthful witness, apparently disclosing all pertinent facts without hesitation or reservation.

Briefly summarizing the testimony and something of the background surrounding the taxpayer and his businesses, it may be said that he is a long-time resident of Raton, New Mexico, who is well

known by all the residents of that city, except, as he said, the "newcomers." His business enterprises are various and many. Among other activities, he has been engaged for years in the banking business in Raton, and he has a half interest in a department or clothing store, which two businesses I have held were his main or principal businesses. He has, however, derived income from many other sources. He has interests which pay a substantial income by way of interest, rentals, wholesale liquor business, businesses in Albuquerque; all of which sufficiently show the many activities in which the taxpayer has been engaged over a long period of years.

In the year 1938, he acquired a tract of land which, at that time, may have been acquired merely for the purpose of holding it and selling it later, in one or more transactions, but possibly he did not contemplate at the time of his purchase that it would be subdivided and sold in separate tracts or lots, as was later done. It is true that the purchase of the original tract was not made for the purpose of receiving income or revenue from the land itself, by way of rental or otherwise. It was the taxpayer's intention to make a profit by selling the same at a later date, or at any time when he could make a reasonable profit from such a sale.

The other tract of land was purchased much later. It was acquired for the purpose of reselling; actually I believe it was intended at the time of its purchase to subdivide and sell it by separate lots.

The taxpayer was not engaged generally in the real estate business, although he had at other times acquired real estate, some of which he still owns, which had been acquired as early as 1920. He had no license to deal in real estate and was not a real estate agent or broker in the usual sense of the term. He testified that the greater part of his time was spent in the bank and clothing store.

In his testimony it can also be found as a fact that in order to sell the tracts of land he had purchased it was necessary to subdivide the same and sell them by separate lots. In fact, one tract had already been platted when he acquired it. Replatting was necessary as to both tracts. This he had done in order that he could find a sale for the property. Also to facilitate the sales and actually to create a market, after the tracts had been subdivided, he secured their annexation to the City of Raton and had them brought within the city limits of Raton, in order that water could be made available to the several lots, without which he could not find purchasers. After the tracts had been subdivided and the additions had been brought into the city, and water had been made available, he proceeded to sell them in separate transactions, for a period of time, some sales having been made in the years 1947 and 1948, but about which there is no controversy in this action, as he was allowed, for those years, to report his income received from the sale of those lots on the capital gains provisions of the statute. For the years 1949 and 1950, his income from the sale of lots was assessed by the Commissioner as income derived from sales in the ordinary course of his business. His contention here is that that assessment was erroneous and he should pay upon the basis of the sale of capital assets.

Again, according to the taxpayer's testimony, he never advertised the lots for sale, he never sought to procure purchasers, no signs were placed on the lots or in the subdivision, none of the property was listed with real estate brokers, and all sales were made by him only to purchasers who came to him and sought to buy.

There were three exceptions to this method, in that the taxpayer testified he believed three lots had been sold by real estate brokers upon their own solicitation, and to whom he paid commissions. These three instances were undoubtedly isolated transactions and it may be said his general plan and purpose was to sell the lots himself to those people who came to him and sought to buy them.

For the years 1949 and 1950, a substantial part of his income was derived from the sale of these lots, upon which he made substantial profits. Without question it is apparent the taxpayer acquired the property to be sold later at a profit. The tracts were subdivided and the annexation to the city was made solely for the purpose of creating a condition which would bring a favorable market for the sale of the lots. While the sales in 1949 and 1950 were not many in number, they were continuous to the extent that he was always ready to sell whenever a purchaser appeared and wanted to buy. In the year 1949, forty lots were sold in fourteen different transactions. In the year 1950, eighty-eight and one-half lots were sold in twenty-eight different transactions.

It may be surprising as to how purchasers were found for the different lots considering there was no advertising, no signs, and none of the usual promotion procedures which attend the sale of lots in the ordinary subdivisions of a city. The taxpayer himself explained this situation by saying that he supposed the neighbors in the area where the lots were located would tell prospective purchasers who owned them, and they would come to see him. Considering that the taxpayer himself was well known in the City of Raton, this situation is not as surprising as it might otherwise seem.

As has been indicated, there is no serious question of fact. The question which remains to be determined is whether the income received from the sale of the lots in question, in the years 1949 and 1950, was income derived from the transactions in the ordinary course of the taxpayer's business, or was it income derived from the sale of capital assets? It is recognized from all the decisions that there is no fixed formula or rule by which this question can be determined. Each case must stand on its own facts.

From the facts in this particular case, I conclude the sale of the lots in question was in the ordinary course of this particular branch of the taxpayer's business, although I have found that his main business was in connection with the bank and the department store. Nevertheless I am definitely of the opinion that the taxpayer, so far as the sale of these lots is concerned, was actually engaged in the real estate business. He bought the property for sale. He created the conditions which made the property marketable. It is apparent the land could not have been sold without having been subdivided into lots, without having been annexed to the city, and without making the water available; all of which occurred through and by the efforts of the taxpayer alone. All of these things were done by him to create a market in order that he could sell the lots regularly and continuously, whenever a buyer desired to purchase. The transaction falls within the rule announced in the cases of Mauldin v. Commissioner of Internal Revenue, 10 Cir., 195 F.2d 714, 715 and Friend v. Commissioner of Internal Revenue, 10 Cir., 198 F.2d 285.

Both the foregoing cases are from the Court of Appeals of the Tenth Circuit, and are not in conflict with the decision announced in the case of Victory Housing No. 2, Inc., v. Commissioner of Internal Revenue, 10 Cir., 205 F.2d 371. That case is quite distinguishable from the case we have under consideration.

In the case of Friend v. Commissioner of Internal Revenue, appears the statement which greatly aids in the decision of the present case, in view of the many activities in which this particular taxpayer was engaged. In that decision it was said [198 F.2d 288]:

"But one may engage in two occupations. He may engage in the practice of law as a profession and at the same time hold property primarily for sale to customers in the ordinary course of the real estate business, within the meaning of section 117."

It occurs to me that the transactions of the taxpayer in this case fall squarely within the rule just quoted.

For the reasons stated, the taxpayer's application for refund must be denied.