Joe DI LISIO and Cristina Di Lisio, husband and wife, Appellants,

v.

Steve P. VIDAL, Director of Internal Revenue for the District of New Mexico, Appellee.

No. 5258.

United States Court of Appeals Tenth Circuit.

May 4, 1956.

and wife, returned as capital gain income derived from the sale of certain lots in Raton, New Mexico. Representatives of the Bureau of Internal Revenue determined that the gain represented ordinary income. A deficiency in tax for each year followed. The tax with accrued interest was paid. Claims for refund were seasonably filed. No action was taken on the claims within six months after the date of their filing and this suit was instituted to recover the refund. The court entered judgment for the defendant, and the plaintiffs appealed. For convenience, reference will be made to Joe Di Lisio as the taxpayer. Cristina Di Lisio was a formal party for the reason that the spouses filed joint income tax returns, and no further reference will be made to her.

■ Section 117(a) of the Internal Revenue Code of 1939, as amended, 26 U.S.C. 1952 ed. § 117(a), entitles a taxpayer to preferential treatment of gain derived from the sale or disposition of a capital asset, but the statute excludes from its scope gain derived from the sale or disposition of property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business. Whether property sold or disposed of by a taxpayer was held primarily for sale to customers in the ordinary course of his trade or business within the meaning of the statute is essentially a question of fact. Home Co. v. Commissioner, 10 Cir., 212 F.2d 637.

■ Though the question has presented itself in widely varying circumstances, no rigid formula or unyielding rule of thumb has been accepted for ready use in every case in determining whether property sold by a taxpayer was held by him for sale to customers in the ordinary course of his trade or business, within the intent and meaning of the statute. Each case has turned upon its own facts and circumstances. But certain general tokens have been laid down as helpful indices for appropriate consideration in reaching a solution of the frequently recurring question. Some of.

---

John P. Dwyer, Albuquerque, N. M. (Frank O. Westerfield, Jr., Albuquerque, N. M., was with him on the brief) for appellant.

Grant W. Wiprud, Washington, D. C. (H. Brian Holland, Asst. Atty. Gen., Robert N. Anderson and Walter R. Gelles, Attys., Dept. of Justice, Washington, D. C., and Paul F. Larrazolo, U. S. Atty., Albuquerque, N. M., were with him on the brief), for appellee.

Before BRATTON, Chief Judge, and HUXMAN and PICKETT, Circuit Judges.

BRATTON, Chief Judge.

The question for decision is whether certain gain was subject to tax as income derived from the sale of capital assets or as ordinary income. In their income tax returns for 1949 and 1950, Joe De Lisio and Cristina De Lisio, husband

the tokens are the purpose for which the property was acquired; the making of improvements or otherwise readying the property for sale; the advertising of the property to attract purchasers; and the continuity and frequency of sales as distinguished from isolated transactions. No one of these factors is conclusive. Neither is the presence or absence of any one of them determinative. But they are factors appropriate for consideration in determining the question. Mauldin v. Commissioner, 10 Cir., 195 F.2d 714; Friend v. Commissioner, 10 Cir., 198 F. 2d 285, 46 A.L.R.2d 761; Victory Housing No. 2 v. Commissioner, 10 Cir., 205 F.2d 371.

■ Evidence was adduced upon the trial of the cause which tended to establish these facts. In 1938, or thereabouts, the taxpayer acquired by purchase approximately 1,150 acres of land outside but adjoining the City of Raton. At the time of the purchase, it was thought that the land included a certain tract of 40 acres. Upon discovering that the 40 acre tract was not included in the purchase, the taxpayer acquired it under a tax deed. The 40 acre tract was platted as the Brilliant Addition. In 1947 or 1948, it was replatted as the Hillcrest Addition. In about 1947, the taxpayer acquired by purchase a tract containing 152 acres, likewise outside but adjoining the City of Raton. Prior to the purchase of that tract, 14 acres of the land was platted as the Mesa Bodena Addition but the plat was not filed. After the purchase, the taxpayer caused the plat to be revised and filed. These tracts were not purchased for the purpose of receiving income or revenue from them in the form of rental or otherwise. It was the intention of the taxpayer from the outset to sell the property when it could be done for a reasonable profit. To help create a market for the property, the taxpayer paid to have a water line brought out to the subdivisions. Realizing that once the subdivisions were within the city limits the city would run to them sewer lines and other utility facilities, the taxpayer was instrumental in having them brought within the city limits. The taxpayer was well known in the City of Raton. He was engaged in the banking business and in the mercantile business, and he had other business interests. But banking and mercantile were his principal businesses. During the taxable years in question, the taxpayer sold lots in the two additions. He did not place any for sale signs on the property; did not advertise it for sale; and did not list it with agents or brokers. Except in three instances, no sales were made through brokers; and in those instances, the brokers came to the taxpayer with the prospective purchasers. The taxpayer made sales himself. During year 1949, he sold 36 lots in 13 transactions in the Brilliant Addition, and 4 lots in one transaction in the Mesa Bodena Addition. During the year 1950, he sold 30½ lots in 13 transactions in the Brilliant Addition, and 58 lots in 15 transactions in the Mesa Bodena Addition. And the sales were spread generally throughout the years, some lots being sold almost every month. Taking all of these facts and circumstances into consideration, and giving to each the weight to which it is appropriately entitled, we share with the trial court the view that the taxpayer held the property primarily for sale to customers in the ordinary course of his trade or business and therefore was not entitled to treat the income derived from the sales as gain derived from the sale or disposition of capital assets. Mauldin v. Commissioner, supra; Friend v. Commissioner, supra. The case of Victory Housing No. 2 v. Commissioner, supra, on which the taxpayer places strong reliance is distinguishable. There the property was acquired for the purpose of building units for rental to war workers. The units were constructed and rented. The taxpayer was in the rental business. The disposal of the property was a liquidation of part of the assets of the taxpayer. A widely different situation is presented here.

In reaching the conclusion that the taxpayer held the lots primarily for sale

to customers in ordinary course of his trade or business, we are mindful of the fact that banking and mercantile were the principal business of the taxpayer; that he devoted most of his time to such businesses; and that he had other business interests to which he devoted most of his time. Neither do we overlook the testimony of the taxpayer that during the taxable years in question, he devoted only 50 or 60 hours to the selling of the lots. But in 1949, he sold 40 lots and derived therefrom slightly more than 18 per cent of his total income; and during the year 1950, he sold 80½ lots and derived therefrom in excess of 15 per cent of his total income. One may engage in two or more businesses. He may engage in the banking and mercantile business and have other business interests, and at the same time hold property primarily for sale to customers in the ordinary course of the real estate business, within the intent and meaning of section 117(a), supra. Friend v. Commissioner, supra.

The judgment is affirmed.