**George L. COLE and Mary K. Cole, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 3970.**

United States District Court
D. Wyoming.

May 17, 1956.

Allen A. Pearson and William A. Swainson, Cheyenne, Wyo., for plaintiffs.

Thomas H. Foye, Atty., U. S. Dept. of Justice, Tax Division, Washington, D. C., and John F. Raper, Jr., U. S. Atty., Cheyenne, Wyo., for defendant.

T. BLAKE KENNEDY, District Judge.

This is an action in which plaintiffs seek to recover under the applicable statutes certain deficiency taxes assessed and paid by them, so assessed upon the ground that the plaintiffs on account of the gains realized from sales were not entitled to long term capital gain treatment, upon which basis the return was made, as distinguished from sales made in ordinary course of business.

The case is before the writer as a retired judge (assigned to this District) on account of the presiding judge having withdrawn because of business transactions with the plaintiffs involving some of the property herein concerned previous to his advent to the federal bench.

The tax involved requires a statement of the facts in a general way in order to fix its status for consideration of the law involved. The plaintiff George L. Cole started out in working in a brickyard and in association with his father developed a small subcontracting brick construction business. In 1927 they erected an apartment house known as the Boulevard Apartments in the city of

Cheyenne which was held until 1945. In the meantime Cole was called into the service in World War II, from which he was released some time in 1945 and returned to Cheyenne after the close of the war. Having then decided to go into the business of building houses generally for sale they sold the above mentioned apartment house in order to secure funds with which to carry out their purpose. They had very little capital and by sheer energy, accompanied by good management, they were able to eventually start on the project of building houses for sale. George had apparently, from his testimony, come up the hard way by hard work and little financial support to launch the enterprise of building houses for sale in the eastern section of the city, which had begun to grow in substantial proportions. It became a successful enterprise and with money which had accrued they decided to build some apartment houses for rent to constitute invested capital. A considerable number of said apartment houses were constructed through the years but small in number as compared with the houses which were built for sale. As the testimony shows that considerably over a hundred of such houses for sale were built from the year 1945 up to the year 1952, the last year under consideration here, while some nineteen or twenty apartment houses were constructed during that period and testified to as held for investment purposes.

The apartment houses here concerned involve those sold during the years 1949, 1950, 1951 and 1952 and cover eleven in number but including a brick house which was held for a year and eleven months and sold for a profit. The time between the acquisition of these apartment properties and their final disposition ranges from seven months to three years and ten months. The property held for seven months is the only one which was disposed of after being held for less than a year.

The plaintiff George L. Cole in 1934 married his present wife, Mary K. Cole, one of the plaintiffs, who was subsequently concerned with him in the ownership and operation of these properties and is one of the plaintiffs here largely on account of the fact that a joint return was made by the plaintiffs concerning the properties involved. The father later passed out of the business and settlement was made with him for his interest in the joint business and his interest disposed of by the payment of money or property so that George Cole became the sole owner of the business during the period here involved. The plaintiffs never listed or offered the properties for sale nor were they committed to any real estate agency for that purpose as distinguished from houses which he was continually building for sale and which were accounted for as sales in the ordinary course of business. In addition to the fact of never having listed the property for sale it was never advertised nor did the plaintiff have a broker's license. The intended purpose of the building of apartments was evidently two-fold: (1) to put the profits accruing from the building business into investment property; and (2) to accommodate the large number of inhabitants who were seeking housing facilities in the fast growing eastern district of the city. It was not his intention at the time these properties were constructed or later to hold them for sale. However, from 1949 to 1952 there came into being what is known as a "seller's market" for all kinds of housing and great pressure was brought upon the plaintiffs to dispose of some of these properties. At first Cole steadily refused but later sold one apartment house to a friend who resided therein and later an adjoining apartment house to the same party on account of the representation that it would be more economical and less expensive to the purchaser to have the two apartment houses so as to cut down the cost of care and maintenance. Continued pressure was brought upon the plaintiff to sell other apartment properties, which at first he refused to do but subsequently yielded to the importunities of a real estate firm who had clients pressing for investment

properties and the most of these properties were disposed of through the Frontier Realty Company under these conditions. In this respect Cole never dealt directly with any of these purchasers nor had any contact with them involving any of the sales. One Lamm, a witness for the plaintiffs, who is a close friend and was formerly in the lumber and material business, attempted to buy some of these apartment houses for an investment, which request was refused by the plaintiff because he did not wish to dispose of the properties. As a result Lamm induced the plaintiff to build an apartment house for him on land which Lamm owned and which became his exclusive property. In the manner before stated under the stipulation of facts Cole disposed of two apartment houses in 1949, two in 1950, four in 1951 and three in 1952. The plaintiff Mary Cole worked with her husband in the matter of taking care of the apartment houses and kept the books thereon while the plaintiff George Cole gave his attention to his primary business of building houses for sale where he kept the books and such sets of books were maintained separately. It would seem that the profits taken from these separate enterprises were probably intermingled for the purpose of developing what then became known as Cole Shopping Center located in and around the growth of the city in eastern Cheyenne and practically in the vicinity of the houses and apartments. The Cole Center developed by plaintiff grew to be a substantial enterprise with different business buildings erected, including a large number of stores of different types, and with a substantial Safeway Store and other similar enterprises testified to as costing more than one hundred thousand dollars. In addition to the importunities to which plaintiff yielded in the sale of some of these apartment houses it was probably to his advantage to sell some of his apartment houses for the purpose of developing the Cole Center, which cost a great deal of money. At one time two realtors, Warren and Covert, called upon the plaintiff for the purpose of attempting to list some of his apartment houses for sale inasmuch as some of them had been disposed of theretofore. Cole refused to list any of his properties stating that they were held for investment but these witnesses for the defendant testified that Cole indicated that they might be for sale. However, the testimony of one of the witnesses was somewhat confusing as to whether the plaintiff had stated that anybody could "sell" these properties or anyone could "buy" them, which left the Court somewhat in doubt as to the exact value of this testimony for the reason that the first analysis of this testimony might mean that the properties might be in the category of being held for sale, whereas if they were available to anyone to buy it might depend on other circumstances as to whether he would be inclined to sell. The testimony fairly considered would indicate that at the time of the sales of these properties the returns as to profit exceeded those which were being derived from rentals, which would be an element to be considered in the disposition of the controversy. As to the situation which existed in 1952, the last year involved in the case, the plaintiffs still retained seven apartment houses which had been undisposed of. These have been converted into the ownership of a family corporation or joint ownership of the plaintiffs, two of which were built in the year 1947, two in 1948 and others built more recently. All witnesses agree that Cole was an excellent builder, which was commonly known in the community, so that in a general way any property constructed by him was in demand when real estate property was moving. The testimony shows that the houses built for sale were usually sold before, during, or immediately after completion, oftentimes listed and known by the community and real estate agencies as being for sale. It was admitted by counsel for the government in argument that the properties here involved were not originally built for sale,

but intended for investment and therefore we are confronted with a situation in which through the actions of the plaintiff during what is defined as a "seller market" they were brought into the category of property held for sale, which distinguishes this case from some others in the books and as a result it devolves upon the government to show that the property here involved was shifted from one class to another during the holding period. While the testimony in the case has not been transcribed the Court has attempted to give a brief synopsis of it from notes and memory for the purpose of discussing the law applicable thereto.

The next step would seem to be consideration of the law which may be applied to the facts as hereinbefore set forth. One point upon which all the courts seem to be unanimous is that each case must rest upon its own facts and circumstances. Among the many cases cited by counsel this Court has selected a few which would seem to express the general view as to the factors which should enter into the decision in a case of this character. Naturally we select decisions from our own Tenth Circuit where available and in this respect we have four decisions in which the opinions have been promulgated by three different judges of our circuit court. Some of these cases have come up for review from a decision of the Tax Court and others, as in this case, where the deficiency tax has been paid and suit filed to recover it back. However, the principles governing both types of cases seem to be the same.

In Friend v. Commissioner of Internal Revenue, 10 Cir., 198 F.2d 285, at page 287, 46 A.L.R.2d 761, in an opinion by Judge Bratton (now Chief Judge of the Tenth Circuit) the following language is quoted:

"It is the well settled rule that whether property sold or otherwise disposed of by a taxpayer was held by him for sale to customers in the ordinary course of his trade or business, within the meaning of

section 117 [26 U.S.C.A.], is essentially a question of fact. Rubino v. Commissioner, 9 Cir., 186 F.2d 304, certiorari denied, 342 U.S. 814, 72 S.Ct. 28 [96 L.Ed. 615]; King v. Commissioner, 5 Cir., 189 F.2d 122, certiorari denied, 342 U.S. 829, 72 S.Ct. 54 [96 L.Ed. 627]; Mauldin v. Commissioner [10 Cir., 195 F.2d 714], supra. It is the function of the Tax Court to weigh evidence, draw inferences, resolve conflicts, and determine facts. And a finding of fact made by that Court will not be disturbed on review if it is sustained by substantial evidence and is not clearly wrong. Helvering v. National Grocery Co., 304 U.S. 282, 58 S.Ct. 932, 82 L.Ed. 1346; Commissioner of Internal Revenue v. Scottish American Investment Co., 323 U.S. 119, 65 S.Ct. 169, 89 L.Ed. 113";

and again, 198 F.2d on page 288:

"While his intention at the time of acquiring the property, at the time of the making of further improvements, and at the time of causing the property to be rezoned was a matter for appropriate consideration of the Tax Court, it was not controlling. The ultimate question of decisive consequence was the purpose for which he was holding the property at the time of the sales. Mauldin v. Commissioner, supra; Rollingwood Corp. v. Commissioner, supra [9 Cir., 190 F.2d 263]."

It may also be noted that in this case attention is called to the fact that the taxpayer was engaged in two different occupations which did not disturb the finding that he could nevertheless be liable to have the property concerned classified as being held for the purpose of sale.

In Mauldin v. Commissioner of Internal Revenue, 10 Cir., 195 F.2d 714, in which the opinion was rendered by Judge Murrah, the case concerns certain lands which were cut up in an addition and sold by the taxpayer. At

page 716 of 195 F.2d the Court indicates certain factors which might be used as determinative. In this case the decision came upon an appeal from the Tax Court:

"There is no fixed formula or rule of thumb for determining whether property sold by the taxpayer was held by him primarily for sale to customers in the ordinary course of his trade or business. Each case must, in the last analysis, rest upon its own facts. There are a number of helpful factors, however, to point the way, among which are the purposes for which the property was acquired, whether for sale or investment; and continuity and frequency of sales as opposed to isolated transactions";

and again on page 717 of 195 F.2d:

"When, however, he subdivided and offered it for sale, he was undoubtedly engaged in the vocation of selling lots from this tract of land at least until 1940. As against his contention that he ceased to engage in the business after 1940, the record evidence shows that he sold more lots in 1945 on a sellers market without solicitation than he did in 1940 on a buyers market. It seems fairly inferable from the record that at all times he had lots for sale, and that the volume sold depended primarily upon the prevailing economic conditions, brought on by wartime activities and their aftermath. It is true that he was in the lumber business, but his returns plainly show that a substantial part of his income was derived from the sale of the lots. In these circumstances, we cannot say that the Tax Court's conclusions are without factual basis."

In Victory Housing No. 2 v. Commissioner of Internal Revenue, 10 Cir., 205 F.2d 371, which likewise reviewed a decision of the Tax Court, Judge Huxman rendered the decision which involved the matter of the construction and sale of housing units in which the decision of the Tax Court was reversed. At page 372 of 205 F.2d we find the following language:

"No rigid rule can be formulated by application of which it can be determined in every case with finality whether property sold by a taxpayer was held primarily for sale to customers in the ordinary course of his trade or business, or whether it was sold as a capital asset. As pointed out by us in Mauldin v. Commissioner, 10 Cir., 195 F.2d 714, there are certain factors or indices helpful in making the determination such as the purposes for which the property was required, the activities of the taxpayer and his agents with respect thereto, the development and improvement of the property for purposes of readying it for sale, an advertising campaign to promote the sale of the property, frequency and continuity of sale, as well as other factors. But, as pointed out, none of them are determinative. Neither is the presence nor the absence of any of these factors conclusive. In the end, each case must stand on its own peculiar facts and circumstances. Because of this and the well recognized principles of law, we deem it unnecessary to cite or digest a large number of authorities from this or other courts.";

and again at page 373 of 205 F.2d:

"The change in policy was the desire of the corporation to make such of these houses as were desired available to returning veterans, who were sorely in need of housing accommodations. The corporation, therefore, determined that it would sell these houses to veterans who came in, inquired about them, and desired to buy and thus as veterans and later some non-veterans came to inquire about these rental facilities and expressed a desire to buy, they were sold, but the company carried on no sales campaign. It did not

advertise the houses for sale either through publication or by signs erected on the premises. It did not list them with real estate men. It did none of the things which we ordinarily associate and find with one actively engaged in the real estate business."

In DiLisio v. Vidal, 10 Cir., 233 F.2d 909, Judge Bratton again considers a case of this type in which some of the facts under consideration may be of importance. At page 911 of 233 F.2d is the following:

"During the year 1950, he sold 30½ lots in 13 transactions in the Brilliant Addition, and 58 lots in 15 transactions in the Mesa Bodena Addition. And the sales were spread generally throughout the years, some lots being sold almost every month. Taking all of these facts and circumstances into consideration, and giving to each the weight to which it is appropriately entitled, we share with the trial court the view that the taxpayer held the property primarily for sale to customers in the ordinary course of his trade or business and therefore was not entitled to treat the income derived from the sales as gain derived from the sale or disposition of capital assets. Mauldin v. Commissioner, supra; Friend v. Commissioner, supra. The case of Victory Housing No. 2 v. Commissioner, supra, on which the taxpayer places strong reliance is distinguishable. There the property was acquired for the purpose of building units for rental to war workers. The units were constructed and rented. The taxpayer was in the rental business. The disposal of the property was a liquidation of part of the assets of the taxpayer. A widely different situation is presented here";

and again at page 912 of 233 F.2d is the reiteration of one engaging in two or more businesses:

"One may engage in two or more businesses. He may engage in the banking and mercantile business and have other business interests, and at the same time hold property primarily for sale to customers in the ordinary course of the real estate business, within the intent and meaning of section 117(a), supra. Friend v. Commissioner, supra."

In Rollingwood Corp. v. Commissioner of Internal Revenue, 9 Cir., 190 F.2d 263, two quotations from the opinion of Circuit Judge Bone merit consideration. This is a case on review from the Tax Court. At page 265 of 190 F.2d is found the following:

"The first matter to be considered is the scope of review to be given the question by this court. Petitioners contend that as all of the facts are stipulated this court should reach its own conclusions without regard to the findings and conclusions of the Tax Court. We cannot agree. Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S. C.A., is plain in its requirement that findings of fact shall not be set aside unless clearly erroneous. It is true that where the facts are not in dispute this court may draw inferences of its own. But the ultimate question is whether the findings are supported by the record. In Pacific Portland Cement Co. v. Food Machinery & Chemical Corporation, 9 Cir., 178 F.2d 541, (a case on which petitioners rely) this court said at page 548: 'And the question before us, in this—as in all other cases in which findings are required—is whether they are supported in the record' ";

and again at page 266 of 190 F.2d :

"While the purpose for which the property was acquired is of some weight the ultimate question is the purpose for which the property is held. Richards v. C.I.R., 9 Cir., 81 F.2d 369, 106 A.L.R. 249. Most of the cases dealing with the problem of whether property is held primari-

ly for sale to customers in the ordinary course of trade or business involve situations where the taxpayer is engaged in some activity apart from his usual occupation and the question is whether this activity amounts to a business. The test normally applied in these situations is the frequency and continuity of the transactions claimed to result in a trade or business. Applying that test to the facts of the instant case we have no difficulty in finding support in the record for the finding that Rollingwood is in the business of selling real property."

In Lobello v. Dunlap, 5 Cir., 210 F. 2d 465, opinion by Circuit Judge Rives, the appeal was from a decision of the District Court in which two tracts were purchased and promulgated, both of which tracts were held by the District Court as being in the class of property held for the purpose of sale. As to one of these tracts the decision of the District Court was reversed and the other affirmed. In this case at page 468 of 210 F.2d are found some factors which are to be considered in reaching a proper classification of the property involved:

"The cases cited illustrate that no rigid rule or fixed formula will furnish an answer to the question. Among the helpful factors that will point the way are: continuity and frequency of sales and sales related activities as opposed to isolated transactions; the extent and substantiality of the transactions; the activity on the part of the taxpayer or those under his instructions in the form of advertising and improvements; the purpose for which the property was acquired; and all other considerations going to the ultimate question of whether at the time of sale the property was held by the taxpayer primarily for sale to customers and also for sale in the ordinary course of the taxpayer's trade or business. Since the question is one of ultimate fact, the judgment of the district court should be affirmed unless found to be clearly erroneous."

Applying the philosophy of these cases to the facts in the case at bar the comparable situations are worthy of comment. First and foremost perhaps is the fact that the properties in question were not acquired for the purpose of being held for sale but for the purpose of investment, which is admitted by counsel for the government. Again the facts in the case at bar show no genuine continuity and frequency of sales as compared to the sales made by the plaintiffs in their house-building program, or as to facts in other cited cases. In fact a sale of ten or eleven properties over a period of four years could scarcely be designated as continuous or frequent. Another factor to be considered is the activity of the taxpayer or those under his instructions in the form of advertising. In the case at bar there was no advertising or listing of any kind by the plaintiff of these properties nor was such a program indulged by any real estate agency which finally procured sales. The taxpayer himself made no effort to sell these properties but when approached at different times absolutely refused to sell but in some instances was induced by circumstances to make isolated sales to friends or for certain purposes. It should be noted that the evidence in this case tends to show that when he started to develop what is known as the Cole Shopping Center, which he conceived to be his chief and outstanding accomplishment, some of the properties in question were disposed of for the purpose of making that development a reality. This incident would not seem to justify a conclusion that the properties should be classed as holding them generally for the purpose of sale under all the attendant circumstances. Such a conclusion would harass and unjustly circumscribe any substantial owner of real estate. The properties here in question were not confined to a particular area of development as was the fact in many of the cases cited, but were scattered over a comparatively wide area, in

keeping with the demand for rentals by the oncoming flood of prospective residents. Certainly such a circumstance could not be logically used for a determination that the properties so sold were being held for the purpose of sale. Another factor to be considered is that in the case at bar the plaintiff continually and repeatedly refused to list his apartment properties with real estate agencies which sought such listing, which strongly indicates that if the properties were actually being held for the purpose of sale he would have embraced every opportunity to secure prompt sales at the best prices obtainable. The fact that the plaintiffs received more profit from the sale of these properties than they were receiving from their rentals cannot offset the other factors hereinbefore set forth. The fact that the properties consisting of houses built and the apartments were handled separately in their accounting indicates strongly that they were being considered as different classes of property in that the houses were being built and sold with continuity and frequency and therefore were held for the purposes of sale, while the apartment properties were by the method used held for investment and rental income.

So far as being engaged in different occupations is concerned, as for example, a lawyer or a banker and a real estate dealer, while the taxpayer here was engaged in the general occupation of a builder there would seem to be no offense to the general principle of being engaged in two distinct business enterprises, to wit: building houses for sale and building apartments for rent and investment.

In the foregoing analysis the Court has attempted to, with a degree of legitimacy, classify the properties here under consideration in the light of the factors which have been mentioned by the courts as proper for consideration. This analysis has led us to the inevitable conclusion that the properties here under consideration should be classified as investment properties and excluded from the classification of properties held for the purpose of sale and therefore entitled to the application of the rule for income as capital gain and it will be so found and judgment directed for plaintiffs.

Unless counsel for plaintiffs and defendant stipulate in writing that this memorandum shall be adopted in lieu of specific findings of fact and conclusions of law, it will devolve upon the counsel for plaintiffs to submit findings of fact and conclusions of law embracing all the necessary fundamental facts, but in harmony with this memorandum, together with an appropriate judgment for plaintiffs, with interest, on or before May 31, 1956, and the clerk will enter an order accordingly.