Cicero I. MURRAY and Olive B. Murray, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 5359.

United States Court of Appeals Tenth Circuit.

Oct. 11, 1956.

138

Charles E. Brace, Oklahoma City, Okl., for petitioners.

Walter R. Gelles, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, I. Henry Kutz and C. Guy Tadlock, Washington, D. C., with him on the brief), for respondent.

Before HUXMAN, MURRAH and PICKETT, Circuit Judges.

HUXMAN, Circuit Judge.

The sole question in this case is whether the gain realized from the sale of platted lots by petitioners during the taxable years of 1948 and 1949 constituted capital gain under Section 117(a) of the Internal Revenue Code of 1939, as amended, 26 U.S.C.A. § 117(a), or ordinary income under the exception set out in that Section. The Section entitles a taxpayer to more favorable treatment when a capital asset is sold but excludes from such preferential treatment sales of property to customers in the ordinary course of a taxpayer's trade or business.

■ The facts were stipulated and there is no disputed issue of fact. The sole question is the permissible inferences which may be drawn from the undisputed facts. Innumerable cases have considered what constitutes a sale of a capital asset or a sale in the ordinary course of a trade or business. No hard or fast rule can be laid down to decide the question. All the cases point out certain factors which are relevant, yet all point out that the rule and the yardstick applied must be flexible. These factors were discussed by us in detail in Maudlin v. Commissioner, 10 Cir., 195 F.2d 714, and in Di Lisio v. Vidal, 10 Cir., 233 F.2d 909, as well as in other cases. These guides are well known and to avoid useless repetition we make reference to what we said in these cases. As has been said so many times, each case must in the end stand on its own bottom and must be decided upon its own peculiar facts.

In 1944 taxpayer Cicero I. Murray, a practicing lawyer, acquired 158 acres of land in Garvin County, Oklahoma, approximately ½ mile from Lindsay, Oklahoma. He erected cattle and hay barns on the land and for a short while grazed cattle thereon. In 1945 a considerable amount of oil activity developed in the vicinity of Lindsay. The taxpayer surveyed and platted 130 acres of the land and established the original town site of Murray Hill, with 28 blocks having 172 lots. Subsequently, additional lots were added to the town site. Thereafter, in a third plat the first addition to Murray Hill was included, making a total of 35 blocks containing 219 lots. Originally many of the lots were ½ acre in area but later were platted and divided into smaller lots for sale.

The taxpayer who erected a house in Murray Hill for his own use constructed a water line from Lindsay to Murray Hill and installed and operated a water system for the subdivision. His operations also included laying out, grading and improving of streets and the planting of trees. In all he expended approximately $48,000. These activities were carried on in addition to his activities of a practicing lawyer. On July 23, 1947, the dedication for the land for town site purposes was filed in the office of the county clerk of Garvin County and the site was incorporated as the town of Murray Hill.

In 1947, 15 lots were sold; in 1948, 57 lots were sold; in 1949, 16 lots were sold; and in 1950, 13 lots were sold. The sales were handled by the taxpayer personally in his law office and resulted in part from a full-page advertisement he placed in the Lindsay newspaper. The

taxpayer treated as a business expense the interest on money borrowed to finance the development and improvement of the subdivision and took a deduction therefor on his income tax return for 1949.

In addition to these activities, taxpayer also dealt in real estate otherwise. In 1948 he bought a number of lots in Purdy, Oklahoma. He also acquired 20 acres of land and in 1949 he transferred real estate to B. R. Stephens. On March 25, 1950, petitioners acquired a lot in block 9 in Murray Hill from one to whom the lot had previously been sold. On July 18, 1950, petitioners also acquired a lot in Murray Hill Addition which had previously been sold in 1949. Taxpayer also built three houses for sale. Two houses were held for rental purposes and two houses were constructed under contract for individual owners. In 1948 taxpayer's income from the sale of lots was $15,715, while the income from his law practice was $4,587.90. In 1949 his income from the sale of lots was $4,950 and the income from his law practice was $7,918.50. From these facts the Tax Court found the taxpayer was engaged in the business of selling real estate in the taxable years of 1948 and 1949 and that the income from such operations was taxable as ordinary income.

The facts in this case are not materially different from those in the Maudlin case, supra. As there, the taxpayer apparently originally bought this real estate as an ordinary investment and not for the purpose of selling it to his customers in the ordinary course of real estate business. But here, as there, when conditions changed, he changed his operations with respect to this tract. He platted it into blocks and lots, laid water mains, constructed roads, graded streets and planted trees. He offered the lots for sale by at least one advertisement in the paper. He constructed houses for sale, built other houses for rental purposes and bought and sold lots within the Addition, as well as purchasing other real estate. The facts also make this case indistinguishable from the Di Lisio

case, supra. Here, as in both of those cases, the taxpayer was engaged in another business or profession. Here, as there, substantial income was derived from other operations. This case is stronger than the two previously cited cases in that while there the greater portion of the taxpayer's income was derived from other operations, here the major portion of his income for at least one year in question came from these activities.

As said in the Di Lisio case, supra [233 F.2d 912], "One may engage in two or more businesses." There, the taxpayer was engaged in banking and in the mercantile business, but it was held that he also held the real estate in question primarily for sale in the ordinary course of the real estate business. We think the Tax Court was warranted in concluding as it did that while taxpayer Cicero I. Murray was engaged in the practice of law he also held this property primarily for sale to customers in the ordinary course of a real estate business.

Affirmed.