**O'Donnell and Elizabeth M. PATRICK, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 12821.**

United States Court of Appeals
Seventh Circuit.
March 9, 1960.

438

Robert E. Nelson, Green Bay, Wis., Thomas H. Krise, Indianapolis, Ind., for petitioner.

Charles K. Rice, Asst. Atty. Gen., Tax Division, Joseph Kovner, Lee A. Jackson, Harry Baum, Rita E. Hauser, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before KNOCH and CASTLE, Circuit Judges, and JUERGENS, District Judge.

CASTLE, Circuit Judge.

The Tax Court of the United States determined deficiencies in income tax and an addition to tax of petitioners as follows:

| Year | Deficiencies | Addition to tax under Sec. 294 (d) (2). IRC 1939 |
|---|---|---|
| 1953 | $2,164.63 | ———— |
| 1954 | 3,529.64 | $324.76 |

These deficiencies and additions to tax arise from the Tax Court's decision that improved and unimproved lots sold by petitioners during these years were held by them primarily for sale to customers in the ordinary course of their trade or business and so were not entitled to long term capital gains treatment.

On this appeal petitioners concede that the improved lots were held by them primarily for sale to customers in the ordinary course of business but appeal from the Tax Court's decision that the unimproved lots were so held.

O'Donnell and Elizabeth M. Patrick, husband and wife, filed joint Federal income tax returns for the calendar years 1953 and 1954 with the District Director of Internal Revenue for the District of Indiana.

The contested issue is whether, under the facts involved, the Tax Court erred in holding that the unimproved lots sold by the taxpayer in 1953 and 1954 were held primarily for sale to customers in the ordinary course of business within the meaning of Section 117(a) (1) (A) and (j) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 117(a) (1) (A), (j), and Sections 1221(1) and 1231(b) (1) (B) of the Internal Revenue Code of 1954, 26 U.S.C.A. §§ 1221(1), 1231(b) (1) (B), with the result that the profits therefrom are not entitled to capital gains treatment.

The evidence shows that petitioner and his wife purchased the original tract of 37 acres in July, 1950 intending to hold it as an investment, and also to build a home for themselves on it; that he farm--

ed about 10 acres (in a part of the tract removed from the part ultimately sold) in 1951 and 1952; and that prior to 1953 he made two efforts to sell the whole tract.

In 1952 the petitioner discussed with a contractor the building of a home on the tract for himself and wife. The contractor sold the petitioner the idea of building about 100 houses on various lots and selling the houses and the lots on which they were built. In the same year the building of two houses was started. After they were partially completed petitioner and the contractor had a disagreement and the petitioner himself completed and sold the two houses, together with the lots on which they were built. This enterprise continued through 1953 and 1954 (the years in issue) and into 1955 and 1956. During 1953 and 1954 petitioner devoted most of his time to the building of houses and such time as may have been required to consummate transactions for the sale of such improved lots. The actual procurement of purchasers was handled through real estate agents who were paid a commission on such sales. Petitioner had no occupation in 1953 or 1954, except the building of houses, the sale of improved lots and the sale of unimproved lots. Petitioner during this period superintended construction, handled finances, made arrangements with sub-contractors, procured materials and did about everything a contractor would do. He had previously had the lots marked out by a survey and had put in a gravel road and a drainage ditch.

Petitioner's basic plan was to build first and then to sell houses and lots as one. It is apparent that disposition of the lots from the outset of his business undertaking was part of his general plan of business activity. It is clear from the evidence that when he began to build houses, contractors operating in the area seeking sites for home building and some who desired to become home owners became aware that lots were available.

Petitioner argues that in as much as he did not advertise or solicit sales or in any other way push the sales of the unimproved lots, the lots may not be considered as property held "primarily for sale to customers". This court pointed out in the recent case of Frankenstein v. Commissioner, 7 Cir., 272 F.2d 135, that while the court will survey all relevant matters as to taxpayer's purposes in acquiring and disposing of the property in question "no one factor is conclusive." Advertising and soliciting were unnecessary because prospects sought out petitioner.

We are of the opinion that the unimproved lots were held as an integral part of his business plan and that the circumstances of the sale show that on the various dates of sale their disposition had become a part of the conduct of his business. Petitioner stresses the fact that he was not a licensed real estate broker or dealer. It is not necessary for one selling real estate owned by himself to have a real estate broker's license.

The Tax Court found after reviewing all of the evidence presented to it that the taxpayer held the unimproved lots in question primarily for sale to customers in the ordinary course of his trade or business. That finding is determinative of the issue unless shown by the taxpayer to be clearly erroneous. United States v. United States Gypsum Co., 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 and United States v. Oregon Med. Soc., 343 U.S. 326, 72 S.Ct. 690, 96 L.Ed. 978.

We conclude that the record sustains the finding that the unimproved lots sold in 1953 and 1954 were in those years primarily held for sale to customers in the ordinary course of the business and the gains therefore were taxable as ordinary income.

The judgment of the Tax Court is affirmed.

Affirmed.