Elmer J. Toll and Ida Toll v. Commissioner.
Toll v. Commissioner
Docket No. 75290.
United States Tax Court
T.C. Memo 1961-301; 1961 Tax Ct. Memo LEXIS 44; 20 T.C.M. (CCH) 1548; T.C.M. (RIA) 61301; October 31, 1961
Reuben Miller, Esq., Bankers Securities Bldg., Philadelphia, Pa., for the petitioners. David E. Crabtree, Esq., for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined a deficiency in petitioners' income tax for 1955 in the amount of $7,302.58. The only question for decision is whether the gain realized by petitioners from the sale of certain real property in 1955 was capital gain as reported by them or ordinary income as determined by respondent. Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioner Elmer J. Toll (hereinafter referred *45 to as petitioner) and his wife, Ida Toll, reside in Philadelphia, Pennsylvania. They filed a joint income tax return for the year 1955 with the district director of internal revenue at Philadelphia, Pennsylvania. From 1946 throughout the taxable year here involved petitioner was a home builder. He purchased land, subdivided it into lots, erected dwellings thereon, and sold the houses and lots to home buyers. Petitioner improved the land by installation of streets and utilities to the extent necessary for the construction of houses. Petitioner, from the time he commenced building houses, had made it a practice only to build houses that could be financed by FHA or VA insured mortgages. From 1946 through 1955 he had built approximately 500 such houses. In 1951 petitioner and a partner who was engaged with petitioner in the building of houses acquired vacant ground in Philadelphia, Pennsylvania bounded by Bristol, Hunting Park, Elsinore and "I" Streets, and in 1953, upon dissolution of the partnership, petitioner became the sole owner of this property. The ground consisted of two blocks, one between "I" Street and Palmetto Street and the other between Palmetto Street and Elsinore Street, *46 both being bounded by Bristol Street and Hunting Park Avenue. At the time the partnership purchased this property in 1951 petitioner had wanted to buy only the piece of ground that was bounded by "I" Street and Palmetto Street from Hunting Park Avenue to Bristol Street, since the other part of the property was not suitable for building FHA and VA financed housing. However, the owner of the property was unwilling to sell one portion of the property separate from the remainder thereof, and the partnership, therefore, purchased the entire tract. At the time the property was acquired by the partnership and in 1953 when petitioner became the sole owner thereof, it was entirely undeveloped ground. In 1953 and 1954 petitioner built 50 row single-family houses on the "I" to Palmetto Street block, 25 of these houses being on the east side of "I" Street and the remaining 25 on the west side of Palmetto Street. Petitioner sold these houses through a real estate broker, and settlement on the last house sold occurred in March 1955. Petitioner is not a broker. In connection with the construction of the houses on the west side of Palmetto Street and on "I" Street, petitioner had paving installed *47 on Palmetto Street, curbing placed on both sides of that street and on "I" Street and electricity, gas, water, and sewer facilities installed in "I" and Palmetto Streets to serve both sides of those streets. Sidewalks were installed on "I" Street and the west side of Palmetto Street. Petitioner constructed no houses upon that portion of the property bounded on the north by Bristol Street, west by Elsinore Street, south by Palmetto Street, and the east by Hunting Park Avenue. In September 1955 petitioner was having dinner with his lumber dealer who had as a guest with him Sol Whiteman. Whiteman was in the pickle business. The lumber dealer asked petitioner why he was not building houses on the east side of Palmetto Street and petitioner explained that he was not able to build because he could not obtain FHA financing, whereupon Whiteman asked petitioner whether he would be interested in selling the property. Petitioner told Whiteman to look the property over and make him an offer. Whiteman did make an offer to petitioner which petitioner accepted, resulting in the sale of this property in September 1955. In 1956 the property which petitioner sold to Whiteman in 1955 was conveyed to *48 two individuals who built for sale two-bedroom row houses thereon in 1957. Petitioner kept records on checkbook stubs, settlement sheets, and memoranda from which a certified public accountant wrote up records for petitioner, generally twice a year, and prepared petitioner's income tax returns. Ground bought by petitioner usually was not recorded on petitioner's books but notations from the records brought by petitioner to the accountant were placed by the accountant on his work sheets. When the partnership purchased the total property here involved, petitioner and his partner gave the accountant the figure of what they had paid for the property and the accountant made a notation on his work sheets from which he prepared petitioner's income tax returns. He included the property here involved in inventory on petitioner's 1953 and 1954 tax returns. The accountant was not informed until some time in 1955 that petitioner did not intend to build on the block between Palmetto Street and Elsinore Street. The cost to petitioner of the two-block tract upon his acquiring it as sole owner in 1953 was $104,000. On petitioner's books the market price for building ground was allocated out of *49 the $104,000 to the "I" to Palmetto Street block upon which petitioner constructed the 50 houses and the difference of $28,000 was allocated as the cost of the remaining portion of the land, the Palmetto to Elsinore Street block. Petitioner received $54,000 from the sale of the Palmetto to Elsinore Street block to Whiteman. Petitioner, on his income tax return, reported the difference between the $54,000 received for this property and the $28,000 basis allocated thereto as long-term capital gain. Respondent, in his notice of deficiency, determined that the gain of $26,000 which petitioner realized on the sale of this land to Whiteman was taxable as ordinary income. Opinion Section 1221 of the Internal Revenue Code of 1954[1] defines the term "capital asset". Among the assets not included in the definition of capital assets are stock in trade of a taxpayer or other property of a kind which would properly be includible in the inventory of the taxpayer if on hand at the close of the taxable year; property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business; property used in his trade or business of a character *50 which is subject to the allowance for depreciation; or real property used in his trade or business. Respondent, in his notice of deficiency, did not state the basis for his determination that the gain from the sale by petitioner to Whiteman constituted ordinary income. Respondent, in his brief, states his position to be that this property constituted property held primarily for sale by petitioner to customers in the ordinary course of his trade or business. However, some of his arguments indicate *51 that he considers the property to be either property of a kind properly includible in petitioner's inventory or property used in petitioner's trade or business. Petitioner contends that he was in the trade or business of building houses and selling them through a broker and not in a general real estate business, that even though the accountant did include the real property here involved in his inventory in 1953 and 1954, it was not properly so includible and that this property was not real property used in his trade or business. The evidence is clear that petitioner's business was that of building houses and selling them through a broker. While this is one field of the real estate business, it is more restricted than a general real estate business, and we think it clear from the nature of petitioner's business that this property was not stock in trade or property of a kind properly includible in inventory or real property used in his trade or business. Cf. Ben L. Carroll, 21 B.T.A. 724 (1930). Whether or not property is held by a taxpayer primarily for sale to customers in the ordinary course of his trade or business is a question of fact to be determined in each *52 case. Among the facts to be considered are the purpose for which the property was acquired or held, the improvements made thereto, the frequency, number and continuity of sales, the nature and extent of the taxpayer's business, the proximity of the sale of the property to its purchase, and whether the property was advertised or listed for sale. Carlson v. Commissioner, 288 F. 2d 228 (C.A. 7, 1961), affirming a Memorandum Opinion of this Court; E. R. Sovereign, 32 T.C. 1350, 1359 (1959) affd. 281 F. 2d 830 (C.A. 7, 1960); Lewis L. Culley, 29 T.C. 1076, 1090 (1958). Even though a taxpayer is considered a dealer in real estate with reference to some of his properties, he may be an investor as to others. Eline Realty Co., 35 T.C. 1, 5 (1960) and cases there cited. Considering all of the evidence in this case, we agree with petitioner that the land sold to Whiteman in 1955 was not held by him primarily for sale to customers in the ordinary course of his trade or business. Petitioner acquired the property not for the purpose of building thereon since it was not suitable for building houses with the type of financing *53 that he consistently used, but in order to obtain the adjacent block upon which to build. There is no question that petitioner at all times pertinent hereto was a home builder and the parties have so stipulated. Petitioner had built and sold approximately 500 homes over a 10-year period. Petitioner in his business as a home builder purchased unimproved land, built houses thereon and sold the property as improved. He was not in the business of selling vacant land. The very fact that petitioner sold the last house built on the west side of Palmetto Street in March 1955 and did not commence building on the property here involved supports his testimony that he was not able to use this property for building the type of houses which he customarily built. Petitioner did not advertise the property for sale, and the negotiations for the sale were commenced at a chance meeting of petitioner with a person interested in buying the property. The only improvements made to the property by petitioner were those resulting from his improving the west side of Palmetto Street on which he built houses. Respondent places great reliance on the fact that petitioner included this property in inventory *54 on his 1953 and 1954 income tax returns. It is clear that these returns were prepared by petitioner's accountant and that the accountant was unaware that the property was not suitable for building of the type done by petitioner when he entered the property in petitioner's inventory. Under these circumstances this book entry is of little significance. Cf. W. Linton Atkinson, 31 T.C. 1241, 1248 (1959). Respondent argues that the fact that it was necessary for petitioner to acquire the entire tract of land in order to acquire the block he needed for building, is insufficient justification for treating the vacant land as a capital asset citing George J. Wibbelsman, 12 T.C. 1022 (1949). That case involved a factual situation different from the instant case. In George J. Wibbelsman, supra, the taxpayers had formed a syndicate to engage in the business of purchasing and reselling vacant land. In order to obtain some land desirable for subdivision, they had also acquired some land which was not fitted for subdivision with the intention of selling it in tracts. In the instant case, petitioner was in the building business, selling lots improved with *55 houses he had built. Selling unimproved property was not a part of his trade or business. Respondent contends that petitioner was a dealer in real estate and in his brief states "The absence of segregation of investment property from other property is fatal to the claim of capital gain treatment." The facts show, however, that petitioner was not a real estate broker or dealer but a builder and seller of homes. Furthermore, the authorities cited by respondent do not support his contention even with respect to a dealer as exemplified by the following statement in one of the cases relied on by respondent, Stern Brothers & Co., 16 T.C. 295, 313 (1951): * * * While the lack of any such segregation has great significance, yet it would be exalting one factor for consideration into a sine qua non to say that the absence of such segregation in itself conclusively shows the securities in question were not held for investment. On the basis of all the evidence we hold petitioner did not hold the property sold to Whiteman in 1955 primarily for sale to customers in the ordinary course of his trade or business and that the gain from the sale of this property was properly reported *56 by petitioners as long-term capital gain. Because of certain adjustments made by respondent which are uncontested, Decision will be entered under Rule 50. Footnotes
1. SEC. 1221. CAPITAL ASSET DEFINED. For purposes of this subtitle, the term "capital asset" means property held by the taxpayer (whether or not connected with his trade or business), but does not include - (1) stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business; (2) property, used in his trade or business, of a character which is subject to the allowance for depreciation provided in section 167 or real property used in his trade or business; * * *↩